UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL BENETTI,<br>  Plaintiff<br><br>v.<br><br>NATIONAL GRID USA SERVICE<br>COMPANY, INC. and GLENN HARPER,<br>  Defendants | Civil Action No. 1:21-cv-10998<br><br><br>**COMPLAINT** |

## PARTIES

1. The Plaintiff, Michael Benetti, is a natural person with a last and usual residence at 16 Brookstone Road, Lakeville, Plymouth County, Commonwealth of Massachusetts.

2. The Defendant, National Grid USA Service Company, Inc., ("National Grid") is a domestic corporation with a principal place of business at 40 Sylvan Road, Waltham, Middlesex County, Commonwealth of Massachusetts that owns and operates utility services in Massachusetts and around the country, and employs more than 50 people.

3. The Defendant, Glenn Harper, is a current or former manager and agent of National Grid with a last and usual address of 19 Broad Street, Rehoboth, Bristol County, Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

4. Federal question jurisdiction is invoked in this matter under 29 U.S.C. § 2601 *et seq.* (the Family Medical Leave Act or "FMLA").

5. This Court may exercise pendant jurisdiction over the plaintiff's state law claims.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b), as the events giving rise to all claims occurred in the District of Massachusetts.

**FACTS**

7. Mr. Benetti was hired by National Grid in May of 2004. He possessed a sterling work reputation and performance record until approximately 2015 and often worked as a crew chief throughout the years.

8. In September of 2015, Mr. Benetti filed a worker's compensation claim for work-related stress and missed several weeks of work.

9. Mr. Benetti returned to work at National Grid on or about January 23, 2016.

10. After Mr. Benetti returned to work, General Foreman Glenn Harper forced Mr. Benetti to sign forms under duress indicating that his injuries in the fall of 2015 were not work related. He also issued written discipline to Mr. Benetti for allegedly leaving work without notification.

11. Mr. Harper continuously singled out Mr. Benetti for harassment between 2016 and 2019. During this time period, Mr. Harper (1) removed Mr. Benetti from his regular work crew, (2) assigned Mr. Benetti to job sites two hours from his base, (3) placed Mr. Benetti under another foreman for "monitoring" and caused other supervisors to harass Mr. Benetti, and (4) hid Mr. Benetti's tools and equipment from him on the job.

12. Mr. Harper's acts of harassment and retaliation caused Mr. Benetti to submit several union grievances and take several medical leaves of absence between 2016 and 2019 for management of anxiety and depression. A vicious cycle thus developed whereby Mr. Benetti was harassed, required to take time off from work for mental health purposes, and then subjected to additional harassment, retaliation and abuse upon his return to work.

13. Upon receiving notice of Mr. Benetti's request for a medical leave of absence in December of 2018, Mr. Harper placed Mr. Benetti in the "Pay for Time Worked" Program (the "Program") set forth within the National Grid-Local 326/486 IBEW collective bargaining

agreement. The Program effectively freezes the ability of employees with "unsatisfactory attendance records" from utilizing any paid sick time that they have accrued with the company. However, the collective bargaining agreement explicitly recognizes that absences protected under state and federal law shall not be considered grounds for discussion with an employee over poor attendance, let alone invocation of the Program. See **Exhibit "A"** (Pay for Time Worked Program Language, p. 43, Section 2).

14. Mr. Benetti's leave of absence in December and January of 2019 was admittedly not a "protected absence" under the Program, as Mr. Benetti had exhausted all medical leave/sick time afforded him under law prior to the start of this leave period.

15. Mr. Benetti returned to work in January of 2019.

16. In March of 2019 Mr. Benetti was involuntarily taken out of work and suspended without pay under the Program by Mr. Harper, due to rumors that Mr. Benetti was "stressed."

17. Mr. Benetti was cleared to return to work after meeting with National Grid's own mental health counselor on March 30, 2019; however, National Grid did not accept the counselor's initial recommendation and directed him to meet with the counselor again on April 1, 2019.

18. National Grid's counselor wrote a lengthy letter to National Grid on April 1, 2019, once again clearing Mr. Benetti to return to work.

19. In total, Mr. Benetti was unjustly suspended without pay by Mr. Harper for a total of 13 days in March and April of 2019, depriving him of approximately $5,735.60 in wages.

20. Mr. Benetti subsequently grieved his suspension from March and April of 2019 and this grievance was resolved to the parties' mutual satisfaction.

21. On June 24, 2019, Mr. Benetti was approved for nine weeks of medical leave under the federal Family Medical Leave Act ("FMLA") in order to deal with back and intestinal

injuries.  As of this date, Mr. Benetti had accumulated approximately 212 hours of earned sick time.

22. Mr. Benetti has undergone several surgeries since June 24, 2019 and has been unable to return to work since this time.

23. Despite the fact that Mr. Benetti's period of FMLA between June 24 and August 28 of 2019 constituted a "protected absence" under the Program, the defendants refused to allow Mr. Benetti to utilize his earned sick time for this period, unlawfully depriving him access to income of approximately $11,691.80.

## COUNT I
## vs. NATIONAL GRID USA SERICE COMPANY, INC. and GLENN HARPER:

### DISCRIMINATION AGAINST/RETALIATION FOR THE EXERCISE OF RIGHTS AFFORDED UNDER THE FAMILY AND MEDICAL LEAVE ACT
### [29 U.S.C. § 2601 *et seq.*]

24. The plaintiff restates the allegations contained in paragraphs 1 – 23 above and incorporates them by reference herein.

25. The defendants are "employers" under the FMLA, 29 U.S.C. § 2611(4), and subject to its provisions.

26. As of June 24, 2019, the plaintiff had suffered back and intestinal injuries requiring surgery and rehabilitation, constituting a serious health condition pursuant to 29 U.S.C. § 2611(11).

27. As of June 24, 2019, the plaintiff was FMLA-eligible for up to nine weeks of protected leave, which he properly requested permission to utilize.

28. The defendants discriminated and retaliated against the plaintiff because of his exercise of rights under the FMLA, by counting the plaintiff's FMLA leave as part of a pattern of poor attendance under the "Pay for Time Worked Program," and depriving the plaintiff of the

4

ability to receive any earned sick pay during his FMLA leave, in violation of 29 U.S.C. §§ 2614 and 2615, and 29 C.F.R. 825.220(c).

29. The defendants' conduct, as more particularly set forth above, was willful and knowing.

30. The defendants' conduct, as more particularly set forth above, was intended to and did cause harm to the plaintiff, including loss of income.

<u>COUNT II</u>
## vs. NATIONAL GRID USA SERICE COMPANY, INC. and GLENN HARPER:

### INTERFERENCE WITH USE OF FAMILY MEDICAL LEAVE
### [29 U.S.C. § 2601 *et seq.*]

31. The plaintiff restates the allegations contained in paragraphs 1 – 30 above and incorporates them by reference herein.

32. The defendants are "employers" under the FMLA, 29 U.S.C. § 2611(4), and subject to its provisions.

33. As of June 24, 2019, the plaintiff had suffered back and intestinal injuries requiring surgery and rehabilitation, constituting a serious health condition pursuant to 29 U.S.C. § 2611(11).

34. As of June 24, 2019, the plaintiff was FMLA-eligible for up to nine weeks of protected leave, which he properly requested permission to utilize.

35. The defendants had a duty to refrain from interfering with, restraining and/or denying the plaintiff's exercise or anticipated exercise of rights under 29 U.S.C. § 2601 *et seq.*

36. The defendants interfered with the plaintiff's exercise of rights under the FMLA by counting his FMLA leave as part of a pattern of poor attendance under the "Pay for Time Worked Program," and depriving the plaintiff of the ability to receive any earned sick pay during his FMLA leave, in violation of 29 U.S.C. §§ 2614 and 2615, and 29 C.F.R. 825.220(c).

37. The defendants' conduct, as more particularly set forth above, was willful and knowing.

38. The defendants' conduct, as more particularly set forth above, was intended to and did cause harm to the plaintiff, including loss of income and emotional distress.

39. The defendants are liable to the plaintiff for violating his rights under the FMLA, 29 U.S.C. § 2615.

## COUNT III
## vs. GLENN HARPER:

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

40. The plaintiff restates the allegations contained in paragraphs 1 – 39 above and incorporates them by reference herein.

41. The defendant, Glenn Harper, intended to cause or should have known that his conduct would cause the plaintiff emotional distress.

42. The defendant Glenn Harper's conduct was extreme and outrageous.

43. The defendant Glenn Harper's conduct caused the plaintiff severe emotional distress.

### REQUEST FOR RELIEF

**WHEREFORE**, the plaintiff respectfully requests that this Court enter a final judgment in favor of the plaintiff against the defendants on Counts I - III of the Complaint and award the plaintiff:

(1) Compensatory damages including lost wages and emotional distress;

(2) Liquidated damages in an amount equal to those lost wages awarded under Counts I and II;

(3) Pre- and post-judgment interest;

(4) Costs and reasonable attorney's fees, and;

(5) Such other relief as this Court deems fair and equitable.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL TRIABLE ISSUES.**

          RESPECTFULLY SUBMITTED,
          MICHAEL BENETTI
          By His Attorney,

*/s/ Ryan P. Avery*
_____
Ryan P. Avery, Esq., BBO#679233
MIRAGEAS & AVERY
300 East Main Street, Suite 201
Milford, MA 01757
Tel:   (508) 381-0499
Fax:  (508) 381-0520
ravery@mirageas.com

June 15, 2021